UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CASEY D. FRITZ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO. 1:19-CV-373-PPS ) |
| ANDREW M. SAUL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Casey Fritz appeals the Social Security Administration's decision to deny his application for Title II Disability Insurance Benefits ("DIB"). Fritz alleges disability based upon a multitude of medical issues, including low back pain, degenerative disc disease of the lumbar spine, hip and neck pain, obesity, depression, and anxiety. [Tr. 17-19.][1] The ALJ found that Fritz was not disabled within the meaning of the Social Security Act and that he had the residual functional capacity (RFC) to perform light work with a sit/stand option for every 30 minutes and other postural restrictions.

Fritz challenges the ALJ's decision on a myriad of grounds, but I will only discuss one of them: whether the ALJ failed to properly consider Fritz's neck and right upper extremity impairment and failed to address the combination of Fritz's

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 7.

conditions? Because the answer to those questions is in the affirmative, a remand is necessary.

The ALJ found that Fritz had the following severe impairments: "history of low back pain due to wedging, Schmorl's nodes, seqeulae of Scheuermann's disease, a hemangioma, and spurring in the thoracic spine, scoliosis, and discogenic and degenerative disc disease of the lumbar spine/lumbar radiculopathy primarily on the left side with a herniated disc at L4-5 (status post lumbar partial discectomy and hemilaminectomy in June 2014); left hip trochanteric bursitis; obesity; episodes of syncope; anxiety disorder, and adjustment disorder with mixed depression and anxiety." [Tr. 17.]  Aside from these many severe impairments, Fritz has several other medical challenges, including diverticulitis, neck disorders, and right extremity/hand problems.  [Tr. 18.] The parties have done an extensive job in their memoranda outlining Fritz's vast medical history, physical therapy, medical tests including x-rays and MRIs, and back surgery, so that information will not be repeated here.

Before diving into the issues presented by this appeal, let's start with a review of the legal framework.  My job is not to determine from scratch whether or not Fritz is disabled.  Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  My review of the ALJ's decision is deferential.  This is because the "substantial evidence" standard

2

is not a particularly rigorous one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Fritz argues that the ALJ should have concluded that his neck disorders and right upper extremity/hand problems are severe impairments; and even assuming they are not severe impairments individually, the ALJ's decision is still erroneous because he failed to consider whether they might be severe when considered in combination with his other conditions. The ALJ had this to say about Fritz's neck disorders and right upper extremity/hand problems:

> Although the claimant testified that he has difficulty gripping guitar picks, that he drops things, that he has neck problems, that his neck pain radiates to his right upper extremity, and that he experiences numbness in his right arm/hand and middle finger, the record when viewed as a whole supports a finding that he does not have any severe neck or right upper extremity/hand problems. He has not undergone any surgery on his neck or right upper extremity/hand. An x-ray of his cervical spine done in August 2017 was negative (Ex. 23F) and an MRI study of his cervical spine done in June 2018 was negative, except for uncinate hypertrophy at C4-5 and disc bulging at C6-7; however, there was no evidence of any stenosis, except for "mild" right neuroforaminal stenosis at C4-5 (Ex. 22F). Finally, the record contains very little evidence of

> significant loss of grip strength and fine finger manipulative ability in his right hand.

[Tr. 18-19.] To summarize: the ALJ found Plaintiff's neck/right upper extremity disorder was not severe because: (1) Fritz had not undergone any surgery; (2) the August 2017 cervical spine x-ray was negative; (3) the June 2018 MRI showed "no evidence of any stenosis," except, the ALJ then stated there was "mild right neuroforaminal stenosis at C4-5;" and (4) there was very little evidence of significant grip strength and fine finger manipulative ability in his right hand. This reasoning is suspect in several regards.

First, the regulations certainly don't require a claimant to undergo surgery for an impairment to qualify as severe. *See, e.g., Young v. Colvin*, No. 13 C 8929, 2016 WL 5848908, at *9 (N.D. Ill. Oct. 6, 2016) (finding where the ALJ used the fact that claimant elected not to go through another surgery "as a reason for rejecting Plaintiff's allegations regarding his pain is not persuasive."). Also, it's curious that the ALJ stated, on the one hand, there was no evidence of any stenosis in the June 2018 MRI, and then turn around and concede, on the other hand, that there *was* mild right neuroforaminal stenosis at C4-5. Regarding the grip strength in Fritz's right hand, it was assessed as a 4/5 by Dr. Parker, but he also noted that Fritz was wearing a wrist splint at the time because he "fracture[d] right small finger digits punching solid object 8 weeks ago," which could have possibly altered the results. [Tr. 717, 719.] Finally, there is some medical evidence in the record showing that the condition might have been severe

4

independently, or at least when viewed in combination with the other impairments. For example, Dr. Jonna, the primary care physician, diagnosed Fritz with "neck pain, acute," on August 28, 2017. [Tr. 767.] At the ALJ hearing on July 17, 2018, Fritz testified that his neck problems started about six months earlier, and he is having more right arm and hand problems now. [Tr. 52.] Fritz said he has radiating pain that goes down into his right hand and a loss of feeling through his middle finger. [*Id.*] The pain in his right hand causes him to drop objects and he has problems holding things, like a guitar pick. [Tr. 64.]

Regardless of whether Fritz's neck and right upper extremity impairment should have been characterized as a severe impairment instead of nonsevere, the ALJ's assessment of Fritz's RFC lacks adequate support in the record to be upheld. When determining the RFC, the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The regulations provide that if a claimant has more than one impairment, "[w]e will consider all of your medically determinable impairments of which we are aware," including those impairments that are not severe, in assessing the RFC. 20 C.F.R. § 404.1545(a)(2).

In this case, the ALJ failed to consider Fritz's neck and hand conditions in combination with Fritz's back pain and obesity (which the ALJ did find to be severe). The RFC as determined by the ALJ is as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he needed a sit/stand option (which allows for alternating between sitting and standing up every 30 minutes, if needed, but the positional change will not render him off task). He could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and he could never climb ladders, ropes, or scaffolds. He needed to avoid even moderate exposure to hazards (i.e. operational control of dangerous moving machinery, unprotected heights, and slippery/uneven/moving surfaces). Mentally, the claimant was limited to understanding, carrying out, and remembering simple instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout the eight-hour workday without frequent redirection to task. He could not perform work that required satisfaction of strict or rigid production quotas or that involved assembly-line pace work. He could have only occasional interactions with others, including supervisors, co-workers, and the general public.

[Tr. 20-21.] Although the ALJ used this RFC to determine that Fritz could perform jobs like repack room worker (whatever that is), small products assembler, and officer helper [Tr. 27], he does not address how Fritz could complete an 8-hour workday at these jobs with acute neck pain and his right arm/hand pain which Fritz testified results in difficulty grasping objects and dropping them.

Moreover, the ALJ failed to properly analyze Fritz's obesity in combination with the rest of his impairments. During the ALJ hearing, Fritz testified that he was about 6

feet tall and that his weight fluctuates, but he weighed around 230 pounds at that time. [Tr. 40.] The ALJ acknowledged that Fritz has a BMI ranging between 30-39 and that he has "severe obesity." [Tr. 19.] Any BMI of 30 or greater is considered obese. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on his other conditions when arriving at the RFC assessment. *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008).

Here, the ALJ found that Fritz's obesity was severe [Tr. 17], which means it significantly limited Fritz's ability to perform basic work activities, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016). Yet the ALJ's single statement that "[t]he claimant's severe obesity (with a body mass index ranging from about 30 to 39) has been considered in assessing whether the listings are met or equaled, as well as in assessing the claimant's residual functioning capacity" is merely a rote statement. [Tr. 19.] It fails to "create a logical bridge from the bare statement that he considered Plaintiff's obesity in combination with other limitations and what specific conclusions he came to regarding the limitations they cause." *Visinaiz v. Berryhill*, 243 F.Supp.3d 1008, 1013 (remanding); *see also Parker v. Colvin*, No. 2:15-CV-316-JEM, 2016 WL 4435622, at *4 (N.D. Ind. Aug. 22, 2016) (ALJ's single statement that "the claimant's obesity was

7

considered in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling" was not enough to create a logical bridge).

As the court noted in *Lashaun B. v. Saul*, No. 2:19-cv-38, 2019 WL 6112561, at *8 (N.D. Ind. Nov. 18, 2019), "[g]enerally indicating that the [ALJ] considered obesity, without providing any analysis, is contrary to the Commissioner's own Rule regarding obesity and cases in this Circuit." SSR 02-1p specifically provides that "we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *See Villano*, 556 F.3d at 562 ("under S.S.R. 02-1p the ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic."). "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez*, 277 F. App'x at 623-24. In this case, Fritz's obesity *is* a severe impairment, thus it seems all the more critical to consider how his obesity may interact with, and potentially worsen, his other conditions. Severe obesity could, of course, impact Fritz's degenerative disc disease, low back pain, hip pain, and depression. *See, e.g., Allensworth v. Colvin*, 814 F.3d 831, 833-34 (7th Cir. 2016) (discussing obesity's effect on back impairments).

Although "this type of error may be harmless when the RFC is based on limitations identified by doctors who specifically noted obesity as a contributing factor

8

to the exacerbation of other impairments," *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013), there is no evidence in this case that Fritz's physicians and the state agency consultants the ALJ relied upon considered Fritz's obesity in their assessments or in combination with his other impairments. [Tr. 96-107, 109-120, 122-135, 489-490, 710-721.] While some of the reports note Fritz's weight, it does not seem like any of the physicians took Fritz's obesity into account, either on its own, or in combination with his other impairments. *Id.*

The ALJ also failed to consider Fritz's pain together with his mental functioning. Although the ALJ recognized that Fritz had the severe impairments of anxiety disorder and adjustment disorder with mixed depression and anxiety, he did not address the combination of these impairments with the well-documented pain from which Fritz suffers. *See Cannon v. Berryhill*, 1:18-cv-203, 2019 WL 1011872, at *7-8 (N.D. Ind. Mar. 4, 2019) ("Clearly, the ALJ's analysis is critically flawed in that he did not consider whether and how Plaintiff's depression may relate to her other severe impairments . . . A large component of Plaintiff's claim is premised on her pain, which inherently affects a person's mental functioning.").

In response to Fritz' argument that the ALJ failed to properly consider his severe impairments together with the non-severe conditions, the Commissioner points to the ALJ's note that Fritz "did not have an impairment or combination of impairments" that met or medically equaled any listed impairment. [Tr. 19.] But this kind of boilerplate

9

statement doesn't cut it. "Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered." *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015).

In sum, the ALJ's failure to substantively address Fritz's neck and upper right extremity disorder, obesity, pain, and depression in combination with each other and along with all the other impairments, leaves me unable to trace his RFC findings, and I cannot find that there is a "logical bridge" between the evidence and the ALJ's conclusions.

\* \* \*

Because I am remanding this case for the reasons stated above, I need not discuss the multiple remaining issues raised by Fritz. He can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: September 23, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT